INMAN, Judge, concurring in part and dissenting in part.
I concur in the majority opinion affirming the Alimony Order and Attorney Fees Order. I respectfully dissent from the majority opinion vacating the trial court's conclusions of law regarding custody and its decree awarding full custody to Plaintiff. The majority's holding in this respect is precluded by established precedent of the North Carolina Supreme Court and this Court and threatens to upend the stability of decisions by our trial courts in child custody disputes between parents.
The trial court's Amended Order denying Defendant custody and visitation complied with Section 50-13.5 of the North Carolina General Statutes, which provides:
In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.
N.C. Gen. Stat. § 50-13.5(i) (2018) (emphasis added). "Where a statute contains two clauses which prescribe its applicability and clauses are connected by the disjunctive 'or', application of the statute is not *458 limited to cases falling within both clauses but applies to *451 cases falling within either one of them." Grassy Creek Neighborhood All., Inc. v. City of Winston-Salem , 142 N.C. App. 290, 297, 542 S.E.2d 296, 301 (2001) (internal quotation marks and citations omitted). Ultimately the trial court found that "[i]t is not in the children's best interests to have visitation with Defendant." Given this finding, pursuant to N.C. Gen. Stat. § 50-13.5(i), the trial court had the authority to suspend Defendant's visitation with the children without finding that Defendant was a person unfit to visit them.
The trial court's express finding that visitation with Defendant was not in the children's best interest followed several other findings by the trial court of Defendant's harmful interactions with her children, including: (1) Defendant's behavior necessitated that her daughter have a safety plan while in her custody; (2) Defendant engaged in physical and verbal altercations with her daughter; (3) Defendant was trespassed from her son's preschool as a result of her behavior there; (4) she had difficulty controlling her son's behavior; (5) she removed her son from preschool contrary to the school's recommendation and without Plaintiff's knowledge or consent; and (6) her daughter's emotional distress was caused by spending time with Defendant. Each of these findings was supported by competent evidence.
The majority does not hold that the trial court erred in its findings of fact regarding Defendant's harmful interactions with the children. The majority does not hold that the trial court erred in finding that visitation with Defendant was not in the children's best interest. Rather, the majority holds that Defendant has a constitutional right to visitation with her children which has been violated by the trial court and remands the matter for "constitutionally required findings based upon clear, cogent, and convincing evidence." In support of today's holding, the majority relies on Moore v. Moore , 160 N.C. App. 569, 587 S.E.2d 74 (2003), a decision disavowed by this Court-and one directly contrary to controlling North Carolina Supreme Court precedent-which held that when resolving a custody dispute between two parents, a trial court cannot suspend one parent's visitation rights absent a finding that either the parent is unfit or engaged in conduct that is inconsistent with his or her protected status. Id. at 573, 587 S.E.2d at 76.
Moore held that in a custody dispute between a child's natural or adoptive parents, "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." Id. at 572, 587 S.E.2d at 76 (internal quotation marks and *459 citation omitted). As support for this holding, Moore quoted Petersen v. Rogers , 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994), which established a constitutionally-based presumption favoring a parent in a custody dispute with a non-parent (the " Petersen presumption").[4] But unlike Moore , Petersen involved a custody conflict between parents and non-parents. 337 N.C. at 399, 445 S.E.2d at 902. Moore did not acknowledge that factual distinction or provide any analysis to support extending the Petersen holding to a dispute between two parents. Nor did Moore acknowledge controlling Supreme Court precedent expressly holding that Petersen does not apply to custody disputes between two parents, such as the case we decide today.
Significantly, after Petersen was decided and a few months prior to Moore , the North Carolina Supreme Court, in a child custody dispute between a father and maternal grandmother, explained the distinction between proceedings involving (1) a parent versus a non-parent, and (2) a parent versus the other parent:
We acknowledged the importance of [a parent's] liberty interest nearly a decade *452 ago when this Court [in Petersen ] held: absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail. The protected liberty interest complements the responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. The justification for the paramount status is eviscerated when a parent's conduct is inconsistent with the presumption or when a parent fails to shoulder the responsibilities that are attendant to rearing a child. Therefore, unless a natural parent's conduct has been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent offends the Due Process Clause of the United States Constitution. Furthermore, the protected right is *460 irrelevant in a custody proceeding between two natural parents, whether biological or adoptive , or between two parties who are not natural parents. In such instances, the trial court must determine custody using the "best interest of the child" test.
Owenby v. Young , 357 N.C. 142, 145, 579 S.E.2d 264, 266-67 (2003) (internal quotation marks and citations omitted) (emphasis added). Moore failed to cite Owenby , much less attempt to distinguish its holding that a parent's constitutional right is irrelevant in a custody dispute with the other parent. Moore was not pursued further on appeal, so its conflict with Owenby was not reviewed by the Supreme Court.[5]
The error of Moore was ultimately noted a decade later, in a unanimous decision written by a judge who had concurred in Moore . In Respess v. Respess , 232 N.C. App. 611, 754 S.E.2d 691 (2014), that judge, writing for a unanimous panel, concluded that "the standard articulated in Moore directly conflicts with prior holdings of ... our Supreme Court and therefore does not control our decision in the instant case." Id. at 624-25, 754 S.E.2d at 700-01. Respess explained that prior to Moore , precedent consistently held:
(1) the standard in a custody dispute between a child's parents is the best interest of the child; (2) the applicable burden of proof is the preponderance of the evidence; (3) the principles that govern a custody dispute between a parent and a non-parent are irrelevant to a custody action between parents; and (4) a trial court complies with N.C. Gen. Stat. § 50-13.5(i) if it makes the finding set out in the statute.
Id. at 627, 754 S.E.2d at 702. Respess acknowledged our Supreme Court's holding in In re Appeal of Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989), that a panel of this Court is bound by a prior decision by another panel of this Court deciding the same issue, but held that rule *461 of decision did not apply to bind the panel to follow Moore , because "this Court has no authority to reverse existing Supreme Court precedent." Respess , 232 N.C. App. at 625, 754 S.E.2d at 701. Respess was never appealed and, until our Supreme Court tells us otherwise, Respess remains good law on both points.
Today's majority opinion quotes a portion of the opinion in Owenby , but conspicuously omits the Supreme Court's key holding directly controlling in this case, that a constitutional analysis "is irrelevant in a custody proceeding between two natural parents" and that "[i]n such instances, the trial court must determine custody using the 'best interest of the child' test." Owenby , 357 N.C. at 145, 579 S.E.2d at 267 ; see also Respess , 232 N.C. App. at 626, 754 S.E.2d at 701-02 (" Moore's holding that the Petersen presumption applies to a trial court's decision to deny visitation *453 rights to a non-custodial parent [in a dispute with the custodial parent] contradicts our Supreme Court's holding [in Owenby ] that Petersen is 'irrelevant' to a dispute between parents and that in such instances, the trial court must determine custody using the 'best interest of the child' test." (internal quotation marks, citation, and brackets omitted) ).
The majority also fails to distinguish the facts of this case from Respess , or to address the effect of Owenby on Moore's precedential value. The majority's holding today deviates from years of consistent precedent and confuses an otherwise settled area of law affecting families across our state.[6]
The majority asserts that Respess violated the North Carolina Supreme Court's holding in In re Appeal of Civil Penalty that one panel of this Court is bound by a previous panel's decision on the same issue. But the majority fails to acknowledge that Respess explicitly held that In re Civil Penalty did not require this Court to repeat the holding in Moore *462 that was contrary to controlling precedent by our Supreme Court. See Respess , 232 N.C. App. at 629, 754 S.E.2d at 703.
Earlier this year, in a unanimous opinion, this Court expressly adopted the holding in Respess which interpreted and distinguished In re Civil Penalty to disavow Moore . See Martinez v. Wake Cty. Bd. of Educ ., --- N. C. App. ----, ----, 813 S.E.2d 658, 667 (2018) (discussing Respess at length and holding that "it is clear that where a prior ruling of this Court is in conflict with binding Supreme Court precedent, we must follow the decision of the Supreme Court rather than that of our own Court"). Today's decision cannot be harmonized with Respess or Martinez .
The jurisprudential history of In re Civil Penalty , contrasted with the history of Moore , Respess , and today's decision, demonstrates the majority's error in this case. In re Civil Penalty arose from a conflict regarding the precedent established by the North Carolina Supreme Court in State ex rel. Lanier v. Vines , 274 N.C. 486, 490, 164 S.E.2d 161, 163 (1968). Lanier held that a statute allowing the Commissioner of Insurance to impose a monetary penalty of up to $25,000 for violations of administrative regulations improperly delegated power vested exclusively in the judiciary by Art. IV, § 3, of the North Carolina Constitution. Id . at 497, 164 S.E.2d at 168. Almost twenty years later, in North Carolina Private Protective Services Board v. Gray, Inc., 87 N.C. App. 143, 360 S.E.2d 135 (1987), this Court rejected a constitutional challenge to a statute authorizing the North Carolina Private Protective Services Board to impose monetary penalties of up to $2,000 for violations of agency regulations. Id. at 147, 360 S.E.2d at 138. Gray held that "[t]his case is readily distinguishable from the situation in Lanier ." Id. at 147, 360 S.E.2d at 138.
One year later, in In re Civil Penalty , 92 N.C. App. 1, 373 S.E.2d 572 (1988), in a split decision, this Court addressed the constitutionality of a statute authorizing the Department of Natural Resources to assess an administrative penalty against individuals who violated the Sedimentation Pollution Act. Id. at 3, 373 S.E.2d at 573. The majority opinion concluded that this Court was bound by the decision in Lanier , and not by Gray , reasoning that the "rationale [in Gray ] directly contradicts the rationale and result of Lanier ." Id. at 16, 373 S.E.2d at 581. The dissent asserted that the majority's failure to follow Gray 's interpretation of Lanier "unjustifiably overrule[d]" Gray , which "was correctly decided *454 and should have governed the court's decision in the case before us." Id. at 21, 373 S.E.2d at 583 (Becton, J., dissenting). On review, the North Carolina Supreme Court agreed with the dissent and concluded that "the effect of the majority's decision here was to overrule Gray . *463 This it may not do." In re Civil Penalty , 324 N.C. at 384, 379 S.E.2d at 37. The Supreme Court went on to explain, in a holding quoted by this Court in dozens of decisions over the past quarter century, that, "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." Id. at 384, 379 S.E.2d at 37.
Unlike this Court's decision in Gray , which addressed and distinguished the North Carolina Supreme Court's decision in Lanier , this Court's decision in Moore utterly failed to acknowledge the Supreme Court's decision in Owenby .[7] A citation to Owenby is nowhere to be found in Moore . The assertion by the majority today that Moore applied the holding of Owenby misrepresents the reported decision.
Unlike Moore , Respess cited Owenby , discussed it at length, and characterized the Supreme Court's statement that the Petersen presumption is "irrelevant in a custody proceeding between two natural parents" as a "holding" in Owenby . Respess , 232 N.C. App. at 625-26, 754 S.E.2d at 701-02. As Respess has not been overturned by a higher court, we are thus bound by its interpretation of Owenby , and must conclude that the language ignored by the majority in today's decision is a holding by our Supreme Court. See In re Civil Penalty , 324 N.C. at 384, 379 S.E.2d at 37. And it is directly controlling here. This Court's holding in Moore must yield to the Supreme Court's holding in Owenby . We do not have the "authority to overrule decisions of the Supreme Court of North Carolina and [have a] responsibility to follow those decisions, until otherwise ordered by the Supreme Court." Cannon v. Miller , 313 N.C. 324, 324, 327 S.E.2d 888, 888 (1985).
The rule of decision established by In re Civil Penalty applies when two panels of this Court issue conflicting decisions on the same issue without distinguishing the facts or applicable law, passing each other like ships in the night. But In re Civil Penalty does not bind a panel of this Court to a decision by a prior panel that conflicts with Supreme *464 Court precedent. The conflict between a decision by this Court and one by our Supreme Court is more akin to a row boat passing an ocean liner. It is resolved not by In re Civil Penalty but by stare decisis .
"A primary goal of adjudicatory proceedings is the uniform application of law. In furtherance of this objective, courts generally consider themselves bound by prior precedent, i.e. , the doctrine of stare decisis ." Bacon v. Lee , 353 N.C. 696, 712, 549 S.E.2d 840, 851-52 (2001). The doctrine of stare decisis "is a maxim to be held forever sacred." Commonwealth v. Coxe , 4 U.S. 170, 1 L.Ed. 786, 4 Dall. 170, 192 (Pa. 1800). Because it is so fundamental to our jurisprudence, the doctrine is generally applied without comment and is described at length only in dissenting opinions. "Adhering to this fixed standard ensures that we remain true to the rule of law, the consistent interpretation and application of the law." State ex. rel. McCrory v. Berger , 368 N.C. 633, 651, 781 S.E.2d 248, 260 (2016) (Newby, J., concurring in part and dissenting in part). "[T]here must be some uniformity in judicial decisions ... or else the law itself, the very chart by which we are sailing, will become as unstable and uncertain as the shifting sands of the sea[.]" State v. Bell , 184 N.C. 701, 720, 115 S.E. 190, 199 (1922) (Stacy, J., dissenting).
*455 This Court in Respess correctly held that it was not bound by In re Civil Penalty to follow Moore's holding-which plainly diverged from Supreme Court precedent. And, as Respess distinguished In re Civil Penalty and explained why it did not apply-i.e. , that it did not bind the panel to Moore -we are bound by that interpretation, ironically pursuant to In re Civil Penalty . Stated differently, the majority charts the same wayward course that previously led this Court to run aground even though our Supreme Court has built us a lighthouse in In re Civil Penalty ; just as Gray constituted a binding interpretation of Lanier , Respess provided binding interpretations of Owenby[8] and In re Civil Penalty . We are bound by Respess unless and until it is disavowed by our Supreme Court.
The majority opinion today vacates the conclusions of law and custody portions of the Amended Order based on the trial court's failure to include findings only deemed necessary in Moore . Today's decision, like the decision in Moore , conflicts with binding precedent and the plain language of N.C. Gen. Stat. § 50-13.5(i), the governing statute. Because the dispute is exclusively between the children's parents, the trial *465 court properly applied the "best interest of the child" test. See Adams v. Tessener , 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001) ("In a custody proceeding between two natural parents (including biological or adoptive parents), or between two parties who are not natural parents, the trial court must determine custody based on the 'best interest of the child' test.").
The majority today also asserts-again citing Moore -that the "Amended Order purported to deny Defendant all custody and visitation with her children, effectively terminating her parental rights." A loss of visitation or custody in a Chapter 50 proceeding between two parents is fundamentally different from the termination of parental rights, which can only be accomplished in a proceeding pursuant to Chapter 7B. "Our jurisprudence has long recognized significant differences between a child custody order, which is subject to modification upon a showing of changed circumstances, and orders for adoption or for termination of parental rights, which are permanent." Respess , 232 N.C. App. at 626, 754 S.E.2d at 702 (citations omitted). Among other things, the standard of proof prescribed by Chapter 50 for custody disputes between parents is a preponderance of the evidence; by contrast, the standard of proof prescribed by Chapter 7B for termination of parental rights is clear and convincing evidence. N.C. Gen. Stat. § 7B-1110(b) (2018) ; Speagle v. Seitz , 354 N.C. 525, 533, 557 S.E.2d 83, 88 (2001).
For the foregoing reasons, I respectfully dissent from the majority opinion regarding the award of child custody and would affirm the Amended Order's conclusions of law and decree regarding custody.
Because I dissent from the majority opinion vacating the trial court's decree suspending Defendant's right to visitation with her children, I disagree with the majority's holding that the trial court erred by delegating to Plaintiff the sole discretion to allow, or deny, telephone contact between Defendant and their children. That is, if Defendant has no right to visitation, the trial court's delegation of discretion to Plaintiff is mere surplusage, albeit admittedly confusing. Assuming arguendo that the trial court erred in this portion of its decree, it was surplusage that does not require appellate review.
In sum, I concur in the majority opinion affirming the Alimony Order and Attorney Fees Order. I respectfully dissent from the majority opinion vacating the trial court's conclusions of law and its decree awarding full custody to Plaintiff.

Petersen quoted the holding in Stanley v. Illinois , 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), that " '[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " 337 N.C. at 400-01, 445 S.E.2d at 903 (emphasis omitted) (quoting Stanley , 405 U.S. at 651, 92 S.Ct. at 1212-13, 31 L.Ed.2d at 559 ). Relying on Stanley , the Petersen Court noted that a natural parent has a "constitutionally-protected paramount right to custody, care, and control of their child." Id. at 400, 445 S.E.2d at 903, 337 N.C. 397.

Although Moore was not appealed, our Supreme Court passed on the opportunity to ratify or adopt the holding of Moore two years later in In re T.K., D.K., T.K., & J.K. , 171 N.C. App. 35, 613 S.E.2d 739, aff'd 360 N.C. 163, 622 S.E.2d 494 (2005). That appeal followed a split decision by this Court. The dissent in In re T.K. asserted-as the majority holds here-that a trial court's order awarding visitation to the father was in error because, pursuant to Moore , the trial court did not make findings that the mother's "conduct was inconsistent with her protected status as a parent," or, by clear and convincing evidence, that the mother was "unfit as a parent." Id. at 44, 613 S.E.2d at 744 (Tyson, J., dissenting). On review, the Supreme Court affirmed the majority opinion per curiam . In re T.K. , 360 N.C. 163, 622 S.E.2d 494.

As noted by the majority, until it was disavowed by Respess as violating controlling precedent, Moore was cited in subsequent decisions by this Court for its holding directly contrary to Owenby . But see Everette v. Collins , 176 N.C. App. 168, 173-74, 625 S.E.2d 796, 799-800 (2006) (distinguishing disputes between parents and non-parents, involving the "constitutionally protected status afforded parents," and disputes between only parents, applying the "best interest of the child" determination without constitutional analysis). But none of the decisions citing Moore for that holding acknowledged the conflict. Since Respess , Moore has been cited by this Court for its holding that a trial court's findings of fact must resolve factual issues rather than merely reciting witness testimony, but it has not been cited in a majority decision for the proposition disavowed in Respess . See State v. Robinson , --- N.C. App. ----, ----, 805 S.E.2d 309, 317 (2017) ; Lueallen v. Lueallen , --- N.C. App. ----, ----, 790 S.E.2d 690, 698 (2016) ; Kelly v. Kelly , 228 N.C. App. 600, 610, 747 S.E.2d 268, 278 (2013).

I do not suggest that the panel in Moore deliberately ignored Owenby . The Supreme Court issued its decision in Owenby in May 2003; Moore was heard in this Court just three months later, in August 2003. Given the typical lapse of months between the submission of briefs and hearing before this Court in most cases, it is likely that Owenby was decided by the Supreme Court after briefing in Moore was completed, and that neither counsel nor the panel deciding Moore realized that binding precedent intervened. Such an error reflects not defiance or judicial recklessness but merely the very human occurrence of overlooking a new precedent when deciding one among a tremendous volume of cases heard by panels of this Court. By contrast, today's majority violates precedent specifically called to its attention.

As recounted supra , there is nothing in Moore to indicate it was interpreting or applying Owenby , let alone that it was cognizant of the decision. Thus, Respess was not bound by any interpretation of Owenby in Moore , as none appears therein.