IN THE SUPREME COURT OF NORTH CAROLINA

No. 455A18

Filed 5 June 2020

JOHN TYLER ROUTTEN

v.

KELLY GEORGENE ROUTTEN

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, *Routten v. Routten*, 262 N.C. App. 436, 822 S.E.2d 436 (2018), affirming an order entered by Judge Michael J. Denning on 6 March 2017 in District Court, Wake County. Heard in the Supreme Court on 6 November 2019.

> *Jackson Family Law, by Jill Schnabel Jackson, for plaintiff-appellant.*
>
> *Stam Law Firm, by R. Daniel Gibson, for defendant-appellee.*

MORGAN, Justice.

In this appeal involving a child custody dispute between two biological parents, we hold that a trial court may grant full custody to one parent and deny visitation to the other parent, so long as the trial court has entered a written finding of fact that such a custody award is in the best interests of the children, without the need to have determined that the parent who has been denied visitation is a person deemed by the trial court to be unfit to spend time with the children. We therefore reverse the majority decision of the Court of Appeals to the extent that it vacated the trial court's

order regarding custody and the lower appellate court remanded the matter for further proceedings.

**Factual Background and Procedural History**

Plaintiff John Tyler Routten and defendant Kelly Georgene Routten were married on 23 March 2002 and became separated on 26 July 2014. This appeal focuses on the custodial arrangement for the two children who were born to the parties during the marriage: a daughter who was born on 2 June 2004 and a son who was born on 17 July 2012.

On 4 August 2014, plaintiff-father filed a complaint against defendant-mother for child custody and equitable distribution, along with a motion for defendant to submit to psychiatric evaluation and psychological testing. The parties entered into a consent order on 13 August 2014, in which they agreed to a temporary child custody schedule. After defendant filed her answer to plaintiff's complaint on 6 October 2014, asserting several counterclaims, the parties engaged in mediation.

On 24 September 2015, at the conclusion of the court proceeding on the parties' claims for permanent child custody support, and on defendant's counterclaims for alimony and attorney fees, the trial court directed defendant to undergo a neuropsychological evaluation prior to a decision on permanent child custody. On 21 December 2015, the trial court entered a custody and child support order which established a temporary custody schedule, ordered defendant to "take whatever steps are necessary to obtain a complete neuropsychological evaluation no later than June

15, 2016," and scheduled a review hearing on 5 April 2016 and a "subsequent hearing for review of custody and entry of final/permanent orders in July or August of 2016." On 5 April 2016, the scheduled date for the review hearing set by the 21 December 2015 order, the trial court conducted an in-chambers conference on the status of the neuropsychological evaluation in which defendant had been ordered to participate. On 27 April 2016, the trial court entered an order scheduling a hearing on 4 August 2016 to address the results of defendant's neuropsychological evaluation and other matters relating to the best interests of the children. The trial court further directed defendant to obtain the neuropsychological evaluation no later than 15 June 2016 and to submit any resulting written report to plaintiff's counsel at least ten days before the scheduled 4 August 2016 hearing. On 29 July 2016, defendant moved for a continuance and a protective order, stating that she had complied with the orders to obtain a neuropsychological evaluation. She did not submit any written report resulting from the evaluation to plaintiff's counsel, as directed by the trial court's order of 27 April 2016.

At the final custody hearing on 4 August 2016, defendant admitted that although Duke Clinical Neuropsychology Service had performed a neuropsychological evaluation of defendant on 21 April 2016, she had not disclosed this fact to plaintiff prior to the 4 August 2016 hearing. Defendant further admitted that earlier she had informed plaintiff that Pinehurst Neuropsychology, rather than Duke, would perform the evaluation and had implied in the motions that she filed in the months of June

and July of 2016 that her neuropsychological evaluation had not yet been performed. On 9 December 2016, the trial court entered a permanent child custody order awarding sole physical custody of the children to plaintiff. The trial court also entered an order for alimony and attorney fees.

Defendant subsequently filed pro se motions for a new trial and for relief from judgment pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure. She also obtained the issuance of numerous subpoenas on her own behalf. As a result of these filings, plaintiff sought and received a temporary restraining order on 13 December 2016. At the succeeding hearing on plaintiff's preliminary injunction motion on 3 January 2017, the trial court ordered defendant to calendar for hearing her Rule 59 and Rule 60 pro se motions within ten days. Defendant scheduled her motions to be heard on 1 March 2017; and on 20 February 2017, counsel filed amended Rule 59 and Rule 60 motions on her behalf. On 6 March 2017, the trial court entered an amended permanent child custody order which included additional findings of fact and conclusions of law. The amended permanent child custody order included provisions which granted sole legal custody and physical custody of the children to plaintiff, denied visitation by defendant, authorized plaintiff to "permit custodial time between the children and [d]efendant within his sole discretion," and allowed defendant to have telephone conversations with the children twice each week. On 4 April 2017, defendant filed a notice of appeal of the 6 March 2017 amended

permanent child custody order "and all related interim or temporary orders and ancillary orders."

While defendant brought forward numerous arguments in her appeal to the Court of Appeals, there are two issues presented to us for resolution after the rendered decision of the lower appellate court: (1) whether the trial court erred in denying defendant's ability to have visitation with her children as the non-custodial parent without a determination that she was unfit to have visitation with them, and (2) whether the trial court erred in authorizing plaintiff, as the custodial parent, to exercise discretion in allowing visitation between defendant and the children. *See generally Routten v. Routten*, 262 N.C. App. 436, 822 S.E.2d 436 (2018).

In determining these two issues, the Court of Appeals majority agreed with defendant's contention that "the trial court violated her constitutionally protected interest as parent by awarding sole legal and physical custody of the children to Plaintiff without making a finding that she was unfit or had acted inconsistently with her constitutionally protected status as parent." *Id.* at 445, 822 S.E. 2d at 443. It also held that "[t]he trial court erred and abused its discretion by delegating its authority to determine Defendant's visitation rights." *Id.* at 444, 822 S.E. 2d at 442–443. On these issues, the dissenting Court of Appeals judge disagreed with the majority's view on the basis that the analysis was both in conflict with the precedent of this Court and was reached in reliance upon a prior Court of Appeals decision, *Moore v. Moore*, 160 N.C. App. 569, 587 S.E.2d 74 (2003), that had been expressly disavowed by an

earlier panel of the Court of Appeals and therefore violated our directive in *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). *Routten*, 262 N.C. App. at 458–65, 822 S.E.2d at 451–55 (Inman, J., dissenting in part).

On 27 December 2018, defendant filed a notice of appeal in this Court on the basis of her contention that this case involved a substantial constitutional question and that this matter warranted the exercise of our discretionary review. Each of these filings was dismissed *ex mero motu* by this Court in orders entered on 14 August 2019. On 3 January 2019, plaintiff filed a notice of appeal as a matter of right based upon the Court of Appeals dissent.

**Analysis**

The resolution of the issue regarding the trial court's decision to deny visitation by defendant with the children without a determination that she was unfit to have visitation with them is governed by North Carolina General Statutes Section 50-13.5(i). As between two parents seeking custody and visitation of their children, the cited statutory provision states, in pertinent part, that

> the trial judge, *prior to denying a parent the right of reasonable visitation*, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child *or* that such visitation rights are not in the best interest of the child.

N.C.G.S. § 50-13.5(i) (2019) (emphasis added). A plain reading of this subsection reveals two points critical to the resolution of the issues in the matter here. First, this provision contemplates the authorized prospect of the denial to a parent of a right to visitation. Second, that such a denial is permitted upon a trial court's written finding of fact that the parent being denied visitation is deemed unfit to visit the child *or* that visitation would not be in the child's best interests. The unequivocal and clear meaning of the statute identifies two different circumstances in which a parent can be denied visitation, and the disjunctive term "or" in N.C.G.S. § 50-13.5(i) establishes that either of the circumstances is sufficient to justify the trial judge's decision to deny visitation. *See, e.g.*, *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.") (citation omitted). Thus, contrary to the majority view and consistent with the dissenting view in the lower appellate court, in a dispute between two parents if the trial court determines that visitation with one parent is not in a child's best interests, then the trial court is authorized to deny visitation to said parent without a requirement to find the existence of the alternative circumstance that the parent in question is unfit. *See Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 519, 597 S.E.2d 717 722 (2004) (citing *Grassy Creek Neighborhood Alliance, Inc. v. City of Winston-Salem*, 142 N.C. App. 290, 297–98, 542

S.E.2d 296, 301 (2001) for the proposition "that the natural and ordinary meaning of the disjunctive 'or' permits compliance with either condition"). In the present case, there is no dispute that the trial court found that visitation with defendant would not be in the best interests of the children. Pursuant to N.C.G.S. § 50-13.5(i), this was a proper standard to apply in resolving the custody and visitation matters before the trial court. *See, e.g.*, *Adams v. Tessener*, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001) ("In a custody proceeding between two natural parents (including biological or adoptive parents), or between two parties who are not natural parents, the trial court must determine custody based on the 'best interest of the child' test.").

The majority decision of the Court of Appeals in this matter went astray due to its reliance upon *Moore*. The *Moore* case, as accurately recounted by the dissenting judge, "held that in a custody dispute between a child's natural or adoptive parents 'absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail.' " *Routten*, 262 N.C. App. at 458, 822 S.E.2d at 451 (citation omitted). The dissent notes that the Court of Appeals in *Moore* excerpted this language from our opinion in *Petersen v. Rogers*, 337 N.C. 397, 403–04, 445 S.E.2d 901, 905 (1994), "which established a constitutionally based presumption favoring a parent in a custody dispute with a non-parent," as controlling authority for the outcome in *Moore*. *Routten*, 262 N.C. App. at 459, 822 S.E.2d at 451. However, the *Moore* court misapplied our decision in *Petersen*. The *Petersen* case

established a presumption favoring a parent in a custody dispute *with a non-parent*; *Moore* wrongly employed this presumption in a custody dispute between two parents. This presumption is not implicated in disputes between parents because in such cases, a trial court must determine custody between two parties who each have, by virtue of their identical statuses as parents, the same "constitutionally-protected paramount right to custody, care, and control of their children." *Petersen*, 337 N.C. at 400, 445 S.E.2d at 903. Therefore, no constitutionally based presumption favors custody for one parent or the other nor bars the award of full custody to one parent without visitation to the other. The dissent here went on to astutely analyze the snarl that was created by the misapplication of our *Petersen* presumption by the Court of Appeals in *Moore*, and the error that this introduced into the majority decision of the lower appellate court in the present case:

> But unlike *Moore*, *Petersen* involved a custody conflict between parents and non-parents. *Moore* did not acknowledge that factual distinction or provide any analysis to support extending the *Petersen* holding to a dispute between two parents. Nor did *Moore* acknowledge controlling Supreme Court precedent expressly holding that *Petersen* does not apply to custody disputes between two parents, such as the case we decide today [of Routten v. Routten].

*Routten*, 262 N.C. App at 459, 822 S.E.2d at 451 (citation omitted).

Shortly before the Court of Appeals issued its decision in *Moore*, we recognized the crucial distinction regarding a custody dispute between a parent and a non-parent and a custody dispute between two parents. In *Owenby v. Young*, the parents of two

children had divorced, and primary custody had been awarded to the mother with visitation to the father. 357 N.C. 142, 142, 579 S.E.2d 264, 265 (2003). Several years later, the mother was killed in a plane crash. After this occurrence, the children resided with their father for several weeks before the children's maternal grandmother sought primary custody of them, contending that the father was not a fit and proper person to have the care, custody, and control of the children as a result of his alcohol abuse. *Id.* at 143, 579 S.E.2d at 265. In determining *Owenby*, we acknowledged the *Petersen* presumption and reaffirmed that "unless a natural parent's conduct has been inconsistent with his or her constitutionally protected status, application of the 'best interest of the child' standard in a custody dispute with a nonparent offends the Due Process Clause of the United States Constitution." *Id.* at 145, 579 S.E.2d at 266–67 (citations omitted). This Court went on to observe, however, that this "protected right *is irrelevant in a custody proceeding between two natural parents*, whether biological or adoptive, or between two parties who are not natural parents. In such instances, the trial court must determine custody using the 'best interest of the child' test." *Id.* at 145, 579 S.E.2d at 267 (citation omitted).

Although our decisions in *Petersen* and *Owenby* both preceded the decision of the Court of Appeals in *Moore*, with both *Petersen* and *Owenby* involving custodial disputes between a parent and a non-parent and being consistent with one another in the recognition of a constitutionally based presumption favoring a parent in a custody dispute with a non-parent, nonetheless the result in *Moore* was inconsistent

with this line of cases in that the Court of Appeals erroneously applied this presumption in a custody dispute between two parents. The Court of Appeals duplicates this mistake in the instant case and compounds the error by misinterpreting the disjunctive clause of N.C.G.S. § 50-13.5(i) to have required the trial court here to find that defendant was an unfit person to visit the children, when the statute authorized the alternative ground found by the trial court that such visitation was not in the best interests of the children.

We therefore utilize this opportunity to reiterate and to apply the principle which this Court enunciated in *Petersen* that where parents are each seeking custody of their children, each has a full and equal "constitutionally-protected paramount right . . . to custody, care, and control of their children" and there exists no presumption regarding custody merely on the basis of either party's parental status. *Petersen*, 337 N.C. at 403–04, 445 S.E.2d at 905. Furthermore, in light of statutory and case law, in a dispute between two parents with equal parental rights, the trial court must apply the "best interest of the child" standard to determine custody and visitation questions, *see Adams*, 354 N.C. at 61, 550 S.E.2d at 502, and if the court determines that one parent should not be awarded reasonable visitation, the court "shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child *or* that such visitation rights are not in the best interest of the child." N.C.G.S. § 50-13.5(i) (emphasis added). We also expressly

overrule *Moore v. Moore*, and any other Court of Appeals decisions purporting to apply the *Petersen* presumption in custody disputes between two parents.

As to the second issue which we consider upon this review, the lower appellate court's majority vacated the portion of the trial court's conclusion of law stating that "[p]laintiff may permit custodial time between the children and [d]efendant within his sole discretion, taking into account the recommendations of [the parties' daughter's] counselor as to frequency, location, duration, and any other restrictions deemed appropriate by the counselor for permitting visitation between [the parties' daughter] and [defendant]." *See Routten*, 262 N.C. App at, 443–44, 822 S.E.2d at 442. This determination by the Court of Appeals majority was based upon the holdings in two Court of Appeals decisions, each of which held that "the award of visitation rights is a judicial function which may not be delegated to the custodial parent[.]" *Brewington v. Serrato*, 77 N.C. App. 726, 733, 336 S.E.2d 444, 449 (1985). (citing *In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971)).

Here we agree with the view of the dissent, that in light of the trial court's authority to deny *any* visitation to defendant pursuant to N.C.G.S. § 50-13.5(i), any delegation of discretion to plaintiff to allow *some* visitation "is mere surplusage, albeit admittedly confusing." *Routten*, 262 N.C. App. at 465, 822 S.E.2d at 455. The trial court had already determined that it was not in the children's best interests to have visitation with defendant. Although it is curious that the trial court would afford an opportunity for defendant to have visitation with the children at the discretion of

plaintiff after denying visitation rights to her, nonetheless we choose to interpret the trial court's openness to the potential prospect of defendant's ability to see her children as a humane accommodation rather than as an error of law.

## Conclusion

For the reasons cited above, we reverse those portions of the Court of Appeals decision that were raised in this appeal based upon the dissenting opinion of the lower appellate court. We also reverse those portions of the Court of Appeals decision which would have vacated the custody award and remanded for further proceedings.

REVERSED.